JaFITZSIMMONS, Judge.
In this slip and fall ease, the defendant, Winn-Dixie Louisiana, Inc. (Winn-Dixie), appealed the trial court’s judgment in favor of plaintiff, Cindy Holland. We affirm the finding of liability, but amend the award of general damages.
FACTS AND PROCEDURAL BACKGROUND
Ms. Holland saw Dr. Alan Manning, a general surgeon, in the emergency room of Seventh Ward General Hospital on October 80, 1989, at 10:12 a.m. She complained of back pain radiating into both legs. Upon examination, Ms. Holland exhibited mild tenderness in the area of her lower back. The tenderness suggested to Dr. Manning the possibility of back strain. Dr. Manning ordered x-rays of the lumbar and sacral spine because of concern that the pain was caused by a vertebral problem, ruptured disc, or nerve involvement. Dr. Manning testified that pain radiating into the legs can be symptomatic of a nerve compression. X-rays evidenced only curvature of the lumbar spine and spina bifida, a congenital condition. Dr. Manning prescribed an anti-inflammatory and advised Ms. Holland to see an orthopedist if the pain did not improve.
Later that same day, Ms. Holland slipped on some grapes on the floor of the produce section of the Winn-Dixie in Hammond, Louisiana. She testified that she was injured and sought treatment a few days later.
Ms. Holland went to Dr. Dwayne Burch, a chiropractor, on November 2, 1989. He treated her until April 30,1990. Ms. Holland presented with low back pain that radiated into her legs, knee pain, and neck stiffness. Dr. Burch diagnosed back strain and vertebral misalignment. In Dr. Burch’s report of March 26, 1990, he listed the prognosis as good. Dr. Burch testified that Ms. Holland improved, but she did not come for treatments as often as he recommended and stopped coming after April, 1990. In Dr. Burch’s opinion, that action certainly delayed any resolution of the problem. Ms. Holland did not mention to Dr. Burch the visit to the emergency room, on the same day as the fall in the Winn-Dixie, October 30,1989, for back pain radiating into the legs. Dr. Burch ^thought the strain and related problems were caused by the fall. However, Dr. Burch testified that had he known of the prior report of pain, that report would have impacted his decision.
In January of 1990, Dr. Manning excised a cyst over Ms. Holland’s sacrum. At that time, Ms. Holland also reported some mild tenderness in the lower spine when she was examined. Dr. Manning testified that possibly the tenderness was related to back strain or some kind of skeletal problem, but he saw no relation between the cyst and the back pain. In May of 1990, six months after the fall, Ms. Holland was admitted to the emergency room for a blow to the head and again seen by Dr. Manning. She also complained of back pain. Ms. Holland stated that she had lost consciousness after she was hit. Dr. Manning speculated that she may have fallen and hurt her back when she was hit on the head. On December 6, 1990, Ms. Holland saw Dr. Manning for a lump in her breast. *817 At that time, she did not complain of back pain.
Winn-Dixie referred Ms. Holland to Dr. Larry Ferachi, an orthopedic surgeon, for an independent medical examination. He saw her on July 17, 1991. Ms. Holland complained of low back pain, with some tingling in the thigh region. She told Dr. Ferachi that she was seeing a chiropractor. Ms. Holland reported the Winn-Dixie fall, but did not report the back pain suffered earlier on the day of the slip and fall. Dr. Ferachi stated that he found only subjective findings of pain and injury, no objective findings. Dr. Ferachi felt that Ms. Holland suffered a lumbar (lower back) strain from the slip and fall. An x-ray revealed congenital spina bifida, no signs of root impingement, and no signs of disc herniation. Dr. Ferachi suggested objective testing, a bone scan and MRI. Ms. Holland did not return to Dr. Ferachi and the tests were never done. Dr. Ferachi testified that had he known about the report of prior back pain, his decision on the cause of the strain would have been affected.
On February 10,1992, over two years after the fall in the Winn-Dixie, Ms. Holland went to see Dr. David Jarrott, a neurosurgeon. Ms. Holland reported low back pain, numbness of the |4left leg, neck pain, and pain in both shoulders. She recounted the fall in the Winn-Dixie, but denied any other injuries. On examination, Dr. Jarrott noted subjective tenderness, but no objective signs of the pain or injury. Dr. Jarrott reviewed the x-ray of November 2, 1989. He found no sign of neurological impingement, but suggested a MRI to rule out disc involvement. Some stiffening of the normal curvature of the spine was noted, but Dr. Jarrott believed this to be positional in nature, rather than an underlying objective sign of muscle spasm. From the x-ray, Dr. Jarrott also determined that Ms. Holland suffered from spina bifida. Based on the subjective findings, Dr. Jarrott diagnosed chrome cervical and lumbar strain.
On March 27, 1992, Ms. Holland was involved in a serious head-on automobile collision. Ms. Holland filed suit on February 3, 1993 for damages from the automobile accident alleging severe injury to her neck and back.
Ms. Holland had a second appointment with Dr. Jarrott on January 21, 1993, almost a year after the first appointment. At that time, the doctor made the same diagnosis: cervical and lumbar strain. Ms. Holland complained of a new pain in her right hip. A MRI was scheduled. The MRI, done on February 1, 1993, showed degenerative disc disease, with evidence of arthritic involvement. Disc degeneration is usually a disease of long standing, and not associated with any particular injury. Dr. Jarrott examined Ms. Holland again on February 4, 1993. Again, Dr. Jarrott diagnosed cervical and lumbar strain, but added degenerative disc disease. Largely based on subjective complaints, Dr. Jarrott rated Ms. Holland as having a 5% permanent partial medical disability. Because Ms. Holland had been symptomatic for so long, the doctor did not believe that she would improve.
Based on the history given by Ms. Holland of no prior back problem and no accident or injury after the Winn-Dixie fall, Dr. Jarrott opined that the Winn-Dixie fall aggravated or accelerated the disc degeneration. He could not say, however, that the Winn-Dixie fall, more probably than not, caused the disc changes. Dr. |5Jarrott testified that if prior back problems and subsequent accidents occurred, the entire history, the basis for his opinion, would have to be re-evaluated. Ms. Holland never reported the prior back problem or the 1992 automobile accident to Dr. Jarrott.
At trial, Ms. Holland testified that her back hurt before the accident at Winn-Dixie, hurt worse after the Winn-Dixie accident, and even worse after the automobile accident. Ms. Holland gave no reason for the failure to report the prior back pain or automobile accident to the doctors. She also gave no reason for discontinuing the treatment with Dr. Burch or for the long gaps between visits to different doctors.
Winn-Dixie called only one witness, the produce manager, Terry Buzetta. Mr. Buz-etta testified that he was in the produce area often, that the store required everyone to watch out for spills, and that he always kept a look out for spills. On October 30, 1989, *818 Mr. Buzetta was setting up produce in the area of the accident about ten minutes before the slip and fall. He saw nothing on the floor.
In its reasons for judgment, the trial court stated that it found no evidence of a preexisting condition. The trial court found that the back pain experienced on October 30, 1989 related to the removal of the cyst, although the only removal testified to by Dr. Manning was in January of 1990 and Dr. Manning opined that the cyst did not relate to the back pain. In its initial finding, the trial court stated that the slip and fall caused or aggravated the disc degeneration from October 30, 1989, until the date of the trial, July 1,1993, a period of more than three and one-half years. The trial court stated that “[e]ven considering the intervening accident in March, 1992 to be a significant factor,” her lower back injuries lasted for at least two and one-half years. The trial court held (1) that Ms. Holland proved that the slip and fall occurred and injured Ms. Holland, (2) that Ms. Holland had $2485 of medical expenses, and (3) that Winn Dixie did not meet its burden to show that Winn-Dixie operated in a reasonably prudent manner to keep the premises free of hazardous conditions. In the 16trial court’s view, the testimony of Mr. Buzetta was insufficient to meet the burden of La.R.S. 9:2800.6. The trial court awarded a total of $20,000, which included medical expenses and general damages.
Winn-Dixie appealed and assigned two errors to the trial court’s judgment. Winn-Dixie argues that it was not at fault for the slip and fall. In brief, Winn-Dixie does not contest that some foreign substance was on the floor, but asserts that Winn-Dixie submitted sufficient testimony to show that it acted in a reasonably prudent manner to keep the premises free of any hazardous condition. Alternatively, if it was hable, the award of damages was too high.
LEGAL PRECEPTS
In a slip and fall case, the plaintiff must prove that the accident occurred and was caused by a hazardous condition on the merchant’s premises. “The burden of proof then shifts to the merchant to prove that he acted in a reasonably prudent manner in exercising the duty of care he owed ... to keep the premises free of any hazardous conditions.” La.R.S. 9:2800.6 (1989).
The merchant’s duty of care requires that reasonable protective measures, including periodic inspections, are undertaken to ensure that the premises are kept free from substances that might cause a customer to fall. Whether these measures are reasonable must be determined in light of the circumstances of each case. Braud v. Great Atlantic & Pacific Tea Co., 618 So.2d 1069, 1074 (La.App. 1st Cir.1993).
The tortfeasor is responsible only for the direct and proximate results of his wrongful acts. The plaintiff is required to prove the causal connection between the damages claimed and the accident. If the accident aggravated a pre-existing injury or condition, the tortfeasor must compensate the plaintiff to the full extent of the aggravation. Sanders v. Collins, 551 So.2d 644, 651 (La.App. 1st Cir.1989), writ denied, 556 So.2d 1261 (La.1990). However, the plaintiff has a duty “to make every reasonable effort to mitigate damages.” Aisole v. Dean, 574 So.2d 1248, 1254 (La. 171991); see Bacle v. Wade, 607 So.2d 927, 935 (La.App.2d Cir. 1992) (Plaintiff breached the duty to mitigate by not following reasonable orders from the treating physician).
In the assessment of damages, much discretion is afforded the trier of fact, and upon appellate review such awards will not be disturbed in the absence of a clear abuse of discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). If the appellate court finds an abuse of discretion in an excessive award, the award can only be lowered to the highest point within the trier of facts discretion. Bergeron v. Houma Hosp. Corp., 514 So.2d 1192, 1197 (La.App. 1st Cir.1987), writ denied, 517 So.2d 812 (La.1988), citing Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). The principle set forth in Coco v. Winston Industries, Inc. “applies when an appellant questions the adequacy of a monetary award in a case which is otherwise uncomplicated by factual errors relating to the cause or duration of *819 the plaintiff’s disability” or injury. Mart v. Hill 505 So.2d 1120, 1128 (La.1987). Thus, the Coco principle of appellate review does not apply when an appellant questions the award in a case complicated by clear or manifest factual errors as to the cause or duration of the disability or injury. When such factual error interdicts the award of damages, the appellate court then must undertake an independent review of an otherwise complete record, and exercise its own discretion in the award of damages. Boudreaux v. Farmer, 604 So.2d 641, 653 (La. App. 1st Cir.), writs denied, 605 So.2d 1373 & 1374 (La.1992); compare Archie v. Bd. of Sup’rs of La. State U., 543 So.2d. 1348, 1352 (La.App. 1st Cir.), writ not considered, 541 So.2d 845 (La.1989).
FAULT
After a thorough review of the record, we find no error in the trial court’s finding that Winn-Dixie failed to meet its burden to prove that it acted in a reasonably prudent manner. The testimony of the produce manager (that everybody was suppose to watch out for spills and that he always did) was not sufficient evidence to prove that Winn-Dixie employed reasonable protective measures or reasonable procedures for periodic inspections and clean-up. See generally Johnson v. Wal-Mart Stores, Inc., 616 So.2d 817, 821-23 (La.App.2d Cir. 1993) (containing a discussion of what the court generally would consider as adequate periodic inspections, which included detailed written records).
DAMAGES
After a thorough review of the facts of this particular case, we find that the trial court committed manifest error in its factual findings relating to cause and duration of the injury and alleged disability. The trial court committed clear error in finding no pre-exist-ing back problems and in its finding that the 1989 fall caused or aggravated degenerative disc changes. The record does not support an award of over $17,500 in general damages for the injury sustained by this plaintiff under the circumstances in this case.
Ms. Holland admitted that her back hurt before the fall at Winn-Dixie, hurt worse after the fall, and hurt even worse after the 1992 automobile accident. She failed to relay this important medical information in the medical history given to her treating physicians. When asked, the doctors stated that the omitted information would have changed their analysis and affected the causal connection they had drawn between the Winn-Dixie fall and Ms. Holland’s injuries.
Before the 1992 automobile accident, the doctors consistently diagnosed Ms. Holland’s condition as lumbar and cervical strain. The consensus was that this type of injury should resolve within a relatively short period of time, if properly treated. The diagnosis relied on by the trial court, degenerative disc disease, was first made in February of 1993, some time after the March of 1992 automobile accident, and more than three years after the fall. Even without knowledge of the 1992 automobile accident, Dr. Jarrott could not say that, more probably than not, the 1989 fall caused the disc degeneration. All the treating physicians stated that knowledge of prior back problems and subsequent accident would impact their causal determinations. The trial court awarded damages based on its finding that the injury sustained in the fall at the | aWinn-Dixie caused or greatly aggravated the disc degeneration. The record simply does not provide any reasonable support for such a causal finding or a finding of an aggravation of such magnitude or duration.
Ms. Holland breached her duty to take every reasonable step to mitigate her damages. Although improvement was noted, she failed to-report for treatments and discontinued the treatment by Dr. Burch before the problem was resolved. Her medical history contains long unexplained gaps between visits to different doctors for diagnosis or treatment of her back problem. From the record, it appears that she neither sought nor received treatment during these periods.
CONCLUSION
Under these circumstances, the award of over $17,500 was in excess of the amount necessary to compensate this plain *820 tiff for the injury suffered in the fall at the Winn-Dixie. The clear factual errors by the trial court interdicted its award of general damages. Accordingly, after our independent evaluation of the record, we award $8500 for general damages. See generally Leggett v. Fritchie, 610 So.2d 879 (La.App. 1st Cir.1992), writ denied, 612 So.2d 65 (La. 1993); McAllister v. Champion Ins. Co., 602 So.2d 314 (La.App. 1st Cir.1992); Trusclair v. Brown Eagle Ice Co., 594 So.2d 464 (La. App. 1st Cir.1991).
The judgment of the trial court is amended to decrease the general damage award to plaintiff to $8500. In all other respects, the judgment of the trial court is affirmed. The costs of the appeal are assessed equally, one-half to plaintiff, Ms. Holland, and one-half to defendant, Winn-Dixie.
AMENDED, AND AS AMENDED, AFFIRMED.
LeBLANC, J., concurs.