563 So.2d 994 (1990)
Delphine C. LABORDE
v.
WINN DIXIE LOUISIANA, INC.
No. 89-CA-2044.
Court of Appeal of Louisiana, Fourth Circuit.
June 14, 1990.
Rehearing Denied July 19, 1990.
Alvin P. Perry, Jr., Chalmette, for plaintiff/appellee.
Robert E. Peyton, Christovich & Kearney, New Orleans, for defendant/appellant.
Before SCHOTT, C.J., and BARRY and BECKER, JJ.
BARRY, Judge.
The only issue in this grocery store slip and fall claim is liability.
On June 24, 1987, a rainy day, Delphine Laborde and daughter Irma Morris entered a Winn Dixie grocery store. Ms. Morris walked across the door mat to get a shopping basket and Mrs. Laborde slipped and fell after crossing the mat.
Mrs. Laborde was helped to a chair. The assistant manager brought Ms. Morris' car to the door and helped put Mrs. Laborde, who could not move her leg, into the car. Ms. Morris took Mrs. Laborde to Chalmette General Hospital where she was admitted with a broken right hip and wrist.
Mrs. Laborde sued Winn Dixie Louisiana, Inc. for personal injuries. Judgment was rendered in favor of Laborde with the following reasons for judgment:
This cause comes before the court to determine what liability if any defendant, Winn Dixie Louisiana, Inc. (Winn Dixie) has for a slip and fall suffered by Delphine C. Laborde on the premises of its Paris Road Store on June 24, 1987.
When Mrs. Laborde entered the store in question it was raining, she crossed on the mat at the store entrance way took a few steps and fell on the wet floor. The Court takes no notice of the alleged distinctions between `dampness' and `wetness' and the relative hazards of each finding that either there is water on the floor, or it is dry. This floor was not dry, and the Court finds that the water present created a hazardous condition, satisfying plaintiffs burden, and shifting the burden on the defendant to exculpate itself. It has failed to do so.

*995 There has been no testimony on [sic] evidence as to the clean up procedures in use on the day of the accident, no logs document[ing] floor cleaning on that day have been introduced[,] no testimony by an employee whose task included cleaning the floor area in question. In fact no credible evidence sufficient to exculpate defendant has been introduced.
The Court rejects defendants argument that the inclement weather posed an impossible burden finding that reasonable care under the circumstances imposes a higher degree of care in rainy weather; and finds that the defendant not only failed to take heightened measures to ensure the safety of its floors, but failed to take even the ordinary care normally required.
Winn Dixie argues the trial court erred "in refusing to recognize the distinction between `dampness' and `wetness'" and in "refusing to consider the evidence presented by defendant to show that clean-up procedures were actually performed at the entrance way of the store minutes before the accident occurred."

FACTS
Irma Morris, plaintiff's daughter, testified that it had been raining but "was barely drizzling" when she and her mother parked at Winn Dixie. They walked through the door at which point Ms. Morris walked ahead and across the floor mat to get a basket. Mrs. Laborde yelled and Ms. Morris turned and saw Mrs. Laborde (who was past the mat) fall. Ms. Morris described the floor as "damp" and said her pants got wet when she knelt by her mother.
Ms. Morris said the entrance had one floor mat, no "wet floor" sign, no one with a mop and bucket and no one by the door.
Ms. Morris testified that she returned to Winn Dixie later that afternoon after the rain stopped. There were wet spots in the parking lot and the store entranceway had only one floor mat, no "wet floor" sign or anyone mopping the floor.
Under cross-examination Ms. Morris said it was not raining hard when she and her mother entered the store and her mother did not wipe her feet on the mat. She stated that the floor did not have an accumulation of water but was "damp."
Mrs. Laborde, 81 years old, testified: When I got in the door and I make one step; I looked; they had water on the floor, and I make one step and I slip. That's all that I knew.
* * * * * *
Question: You saw the water; you stepped and you fell?
Answer: When I come in, yeah, and, when I put my step and I slipped. That's all that I know.
Mrs. Laborde said it was raining hard when she went inside the store and she was concerned about the water and walked carefully. She stated she saw the water on the floor before she fell: "[i]t was like damp, little water that there was, rain, you know, come inside. It was wet." She stated again that there was water on the floor, and that her pants became wet when she fell.
Edith Laborde, Mrs. Laborde's daughter-in-law, was notified of the accident by Ms. Morris. She testified that she went to Winn Dixie with Ms. Morris after the rain stopped. She stated there was only one mat at the entrance, no "wet floor" sign or an employee with a mop.
Joseph LeBrun, Jr., manager for the Winn Dixie, testified that he did not "handle" the accident, check the scene or investigate the incident. He stated that the normal rainy day procedure was to place two floor mats at each entranceway, an employee to mop, and "wet floor" signs which would be monitored. The service clerk, or "Code 46", would handle the procedures.
LeBrun testified a mop and bucket were kept in a utility room near the entrance and would not be visible. He stated he did not see that the floor mats or signs were in place on the day of the accident, but he would have noticed if they were not in place.
Under cross LeBrun admitted that service clerks constantly go in and out of the store and track water into the store. He said there was no log of clean-up activities and no one had the specific assignment to eliminate tracked-in water. Service clerks were instructed to pick up anything on the floor.
Jules Crovetto, a Winn Dixie stock clerk, testified he did not remember Mrs. Laborde but he remembered the accident. He and William Adams, the assistant manager, were discussing his duties when they heard the sound of someone falling. Mrs. Laborde was helped to a chair, then Adams *996 got Ms. Morris' car and put Mrs. Laborde inside.
Crovetto said the rainy day procedure required a second floor mat, "wet floor" signs and mopping. He did not recall seeing any of those things at the time of the accident, but claimed he would have noticed their absence.
William Adams, the assistant manager who handled the accident, testified that it was raining very hard just before the accident. He said when it began to rain he instructed a service clerk to put two mats at each entrance, a mop and bucket, "wet floor" signs, and to maintain the area while entering and exiting with shopping carts. He stated that he checked to make sure the mats and signs were in place.
Adams testified that 2-3 minutes prior to the accident he had checked the accident area and instructed a service clerk to mop it. There is no explanation why he instructed the clerk to mop. Adams did not see the mopping but said the floor looked damp after the accident as if it had been mopped. He did not remember who had been told to mop. He stated that a "wet floor" sign was located by the entranceway to the side. He said no log was kept of the front area cleanup and no employee was stationed at the entrance.
No Winn Dixie employee testified they mopped the area and no written report regarding the accident was introduced.

LAW
This case was tried on June 27, 1989. La.R.S. 9:2800.6 (applicable to all cases tried after July 18, 1988, see Acts 1988, No. 714 § 2) provides for the liability of a merchant for injuries received on the premises:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a suit for damages by a person who has suffered damages as the result of a hazardous condition while on the merchant's premises, the person must prove that the accident was caused by a hazardous condition. The burden of proof then shifts to the merchant to prove that he acted in a reasonably prudent manner in exercising the duty of care he owed to the person to keep the premises free of any hazardous condition.
C. In exculpating himself from liability under this Subsection, the merchant need not introduce the testimony of every employee of the merchant or any particular proportion thereof, but is only required to introduce the testimony of any employee shown to have actually created the hazardous condition and those employees and management personnel whose job responsibilities included inspection or cleanup of the area where the accident giving rise to the damages occurred.
D. `Merchant' means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
Under Section B a plaintiff must establish the accident was caused by a hazardous condition on the premises. Once established the burden shifts to the merchant to prove he acted in a "reasonably prudent manner" to keep the premises free of hazardous conditions. That part of the statute parallels the existing jurisprudence. Estes v. Kroger Co., 556 So.2d 240 (La.App. 2d Cir.1990), writ denied 559 So.2d 1360 (La. 1990).
Under our jurisprudence once the burden shifts the merchant must prove that it did not create the hazard and store personnel exercised the requisite degree of care. Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La.1984). In McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La.1987) the court concluded that Wal-Mart did not meet its twofold burden under Brown because it failed to prove that none of its employees caused the spill which precipitated the injury. The court noted that many Wal-Mart employees who could have caused the spill did not testify and held that only proving adequate clean-up procedures was insufficient.
La.R.S. 9:2800.6 was enacted to counteract McCardie. Section C of the statute lessens the merchant's burden. Nonetheless, the language of 9:2800.6(C) requires testimony as to "any employee" shown to have created the condition, plus management personnel and any employee "whose job responsibilities included inspection or cleanup of the area where the accident giving rise to the damages occurred." Diaz v. Schwegmann Giant Supermarkets, 533 So.2d 1034 (La.App. 4th Cir.1988).
*997 A court of appeal may not set aside the trier of fact's finding unless it is manifestly erroneous or clearly wrong. When testimony conflicts, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The threshold question is whether Mrs. Laborde proved that the accident was caused by a hazardous condition. Winn Dixie urges that "damp" legally means there was insufficient water on the floor to constitute a hazardous condition. That argument ignores the fact that Ms. Morris and Mrs. Laborde stated their clothes got "wet" from the floor which they described as "damp". Further, though Adams testified that the floor was "damp" and appeared as if it had just been mopped, he did not examine the floor after instructing the unnamed service clerk to mop until after the accident.
This testimony provides support for the trial court's finding that the floor was a hazardous condition. We find no manifest error in that ruling.
The burden then shifted to Winn Dixie to prove that it acted in a reasonably prudent manner by exercising the duty of care it owed to keep the premises free of any hazardous condition. La.R.S. 9:2800.6(B).
Two of Winn Dixie's employees only testified as to general procedures on rainy days. Adams' testimony that he made sure extra floor mats, "wet floor" signs and a mop were placed by the entranceways was contradicted by Ms. Morris.
Importantly, Adams said he instructed a clerk to mop the area a few minutes prior to the accident. His testimony indicates water was on the floor. The testimony of Ms. Morris and Mrs. Laborde regarding their wet clothes suggests that water was still on the floor, despite assistant manager Adams' awareness of the danger. Winn Dixie failed to prove that the water had been removed.
Under these circumstances and Rosell v. ESCO, supra, we conclude the trial court was not manifestly erroneous in holding Winn Dixie failed to exculpate itself from liability.
The judgment is affirmed.
AFFIRMED
SCHOTT, C.J., dissents with written reasons.
SCHOTT, Chief Judge, dissenting:
The trial court found that because the floor near the entrance to defendant's store was not dry on a rainy day a hazardous condition existed shifting the burden to defendant to prove it employed reasonable clean-up procedure. Defendant established that its rainy day precautions included placing mats at the entrance and mopping. The trial court found these were not reasonable precautions.
I respectfully submit that a store owner cannot make the entrance dry when it is raining outside no matter what measures are taken. To hold the store owner liable for a slip and fall on a floor which is not completely dry is to make him the insurer of the customer's safety contrary to all of the decisions on the subject.
The trial court's judgment is inconsistent with Thomas v. Winn-Dixie, 407 So.2d 520 (La.App. 4th Cir.1981). There this court affirmed dismissal of the plaintiff's suit under circumstances identical to those in this case. The trial court had expressed the opinion that the store should be the insurer of the safety of its customers but recognized that this is not the law. That is precisely what the court should have done in the instant case and the judgment should be reversed.