RAYNETTA JONES              \*        NO. 2022-CA-0104

VERSUS                    \*

                            COURT OF APPEAL

QUALITY DISTRIBUTION,    \*
INC., NSM INSURANCE          FOURTH CIRCUIT
GROUP D/B/A TRUE         \*
TRANSPORT INSURER AND      STATE OF LOUISIANA
MICHAEL HAMMOND, JR.  \* \* \* \* \* \* \*

CONSOLIDATED WITH:         CONSOLIDATED WITH:

LATOYA STATUM, RASHAAD      NO. 2022-CA-0105
HARRIS AND JASON PETERS, SR.
ON BEHALF OF THE MINOR
CHILD, JASON PETERS, JR.

VERSUS

OLD REPUBLIC INSURANCE
COMPANY, QUALITY CARRIER,
INC., AND MICHAEL HAMMOND

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-06437, DIVISION "A"
Honorable Ellen M. Hazeur, Judge
\* \* \* \* \* \*
**Judge Daniel L. Dysart**
\* \* \* \* \* \*

(Court composed of Judge Daniel L. Dysart, Judge Dale N. Atkins, Judge Pro
Tempore James F. McKay III)

**ATKINS, J., CONCURS IN THE RESULT**

Vanessa Motta
MOTTA LAW, LLC
3632 Canal Street
New Orleans, LA 70119


COUNSEL FOR PLAINTIFFS/APPELLANTS

Craig M. Cousins
Robert L. Bonnaffons
LEAKE & ANDERSSON, L.L.P.
1100 Poydras Street
1700 Energy Centre
New Orleans, LA 70163-1706

COUNSEL FOR DEFENDANTS/APPELLEES

**AFFIRMED**

**SEPTEMBER 14, 2022**

*DLD*
*JFM*
The case at issue in this appeal arises out of a motor vehicle collision, which occurred on July 26, 2017. According to the petition for damages filed by the plaintiff, Latoya Statum, she was driving her 2014 Dodge Avenger eastbound on Interstate 10 in New Orleans with guest passengers Raynetta Jones,[1] Rashaad Harris, and Jason Peters, when Michael Hammond, who was operating a tractor-trailer owned by Quality Carriers, Inc. ("Quality Carriers") and insured by Old Republic Insurance Company ("Old Republic"), merged into Ms. Statum's lane of travel and struck the driver's side of her vehicle. Mr. Hammond, Quality Carriers, and Old Republic were all made defendants in Ms. Statum's lawsuit. In their answer[2] to the petition, the defendants denied fault and disputed that the collision took place as Ms. Statum describes. The defendants maintained that the collision

---

[1] Ms. Jones also filed a petition for damages against the same defendants named in Ms. Statum's lawsuit. The two lawsuits were consolidated. However, in response to a reconventional demand filed by the defendants alleging fraud, Ms. Jones dismissed her claims with prejudice.

[2] The defendants maintain that the accident was no accident at all, but was a staged collision planned by Ms. Statum and others in order to obtain personal injury settlement money from the defendants. The defendants contend that Ms. Statum intentionally rammed her vehicle into the back side of a quality tanker trailer. The defendants also maintain that this incident was part of a broader scheme involving similar incidents.

1

was not an accident but a collision staged by Ms. Statum and others in order to collect personal injury settlement money.

On February 20, 2020, the defendants filed a motion for leave of court to file a reconventional demand against Ms. Statum, which the trial court granted on October 20, 2020. The parties then engaged in discovery, which was not completely fruitful. Therefore, the defendants filed: (1) a motion to deem requests for admission admitted; (2) a motion to compel plaintiff's continuation deposition; (3) a motion for contempt; (4) a motion to quash the 1442 deposition of Quality Carriers; and (5) a motion to extend discovery deadlines. The plaintiff also filed a motion to compel and request for sanctions.

On January 26, 2021, the above listed motions were argued before the trial court. It appears that the trial court then issued two conflicting judgments (February 11, 2021 and February 17, 2021). Thereupon, the plaintiff appealed to this Court. Pursuant to La. C.C.P. arts. 2164 and 2161, a panel of this Court found it appropriate to exercise its discretion to vacate the conflicting judgments and remand the matter to the trial court to issue a proper judgment. *Jones v. Quality Distribution, Inc.*, 2021-0280, 2021-0281, p. 2 (La. App. 4 Cir. 8/24/21), 325 So.3d 1097, 1098.

On remand, the trial court issued a new judgment concerning the various motions. The trial court granted those motions filed by the defendants but denied those of the plaintiff. The trial court also held the plaintiff in contempt and

2

awarded attorney's fees and costs to the defendants. It is from this judgment that Ms. Statum now appeals.[3]

On appeal, Ms. Statum presents the following issues for review: (1) whether the district court erred in quashing the 1442 corporate deposition of defendant/plaintiff in reconvention, Quality Carriers, Inc.; (2) whether the district court erred and abused its discretion in sanctioning plaintiff's counsel who opposed the defendants' motion to continue the first deposition of plaintiff, and the court instead limited a second deposition of Latoya Statum to the allegations listed in the reconventional demand by defendant Quality Carriers; (3) whether the district court erred and committed an abuse of discretion in sanctioning plaintiff for failing to timely respond to the request for admissions by the defendants; (4) whether the trial court erred in sanctioning plaintiff's counsel for not providing a written statement that plaintiff's counsel, in addition to plaintiff, did not have any contacts with Medport, a third-party purchaser of medical receivables; and (5) whether the district court abused its discretion and erred in failing to require the defendants to answer the relative interrogatories and requests for production of documents.

The standard of review for discovery matters is abuse of discretion. *Favrot v. Favrot*, 2012-1573, p. 4 (La. App. 4 Cir. 5/1/13), 115 So.3d 1190. Similarly, the trial court has discretion in imposing sanctions for failure to comply with discovery

_____

[3] La. C.C.P. art. 1915 (A)(6) provides:
   A.   A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
   (6)  Imposes sanctions or disciplinary action pursuant to Article 191, 863, 864 or Code of Evidence Article 510(G).

orders, and its ruling should not be reversed absent an abuse of discretion. *Hutchinson v. Westport Ins. Co.*, 2004-1592, p. 2 (La. 11/8/04), 886 So.2d 438, 440 (citations omitted).

In the first issue that she presents for review, Ms. Statum contends that the trial court erred in quashing the 1442 corporate deposition of a representative of Quality Carriers.

La C.C.P. art. 1426(A) vests a court with the authority to issue "any order, which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." In furtherance of this authority, a court may order "[t]hat the [requested] discovery not be had." La. C.C.P. art. 1426(A)(1).

La. C.C.P. art. 1442, which allows for depositions of corporate representatives, is patterned after Rule 30(B)(6) of the Federal Rules of Civil Procedure. *McWilliams v. Exxon Mobil Corp.,* 2012-1288, pp. 8-9 (La. App. 3 Cir. 4/3/13, 111 So.3d 564, 572.

> A rule 30(b)(6) Notice is subject to limitations under Rule 26 which requires that the information sought not be unduly burdensome or duplicative. Courts have found Rule 30(b)(6) notices to be unduly burdensome which merely request the duplication of other information already obtained through other discovery methods. . . [S]ince depositions are inherently "time-consuming and inefficient," they ought to "be productive and not simply an excuse to seek information that is already known." *Tri-State Hosp. Supply Corp.*, 226 F.R.D. 118, 126 (D.D.C. 2005). Where the notice seeks information which could more easily be obtained from another source, the court may refuse to allow that topic to be the subject of a 30(b)(6) deposition. *See Gossar v. Soo Line R.R. Co.,* 2009 WL 3570335, at *3, 2009 U.S. Dist. LEXIS 100931, *16-17 (S.D. Ind. Oct. 27, 2009).

*Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010).

4

> [I]n response to a motion for protective order under Rule 26(c), a district court may limit "the frequency or extent of use of the discovery methods otherwise permitted" under the Federal Rules of Civil Procedure if it concludes that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2). Further, upon motion of a party and "for good cause shown," the court [in which the action is pending or, on matters relating to a deposition,] in the district in which a deposition is to be taken may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order that the discovery not be had. Fed. R. Civ. P. 26(c).

*Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004).

In the instant case, Ms. Statum's notice of 1442 deposition and subpoena to Quality contained 45 proposed areas of examination and 55 requests for production of documents. However, Ms. Statum is already in possession of the majority of the information she seeks from the police report and other sources. Much of the other information she seeks is irrelevant. The subpoena is overly burdensome and harassing. We also note that Ms. Statum does not assert any claims of direct or independent negligence against a Quality representative but only for its driver. Accordingly, Ms. Statum's insistence on deposing Quality regarding corporate information and Quality's compliance with the Federal Motor Carrier Safety Act would not lead to the discovery of any admissible evidence.

In the second issue that she presents for review, Ms. Statum contends that the trial court erred and abused its discretion in sanctioning the plaintiff's counsel for opposing the defendant's motion to continue its deposition of the plaintiff. However, it was the plaintiff and not plaintiff's counsel who was actually sanctioned by the trial court.

In the instant case, Ms. Statum's counsel repeatedly instructed her client not to answer questions relating to the defendants' suspicions of fraud during her first deposition, claiming that there was "no counter-claim." Even after the defendants reconvened and asserted fraud, Ms. Statum's counsel continued to refuse to allow her client to address the defendants' inquiries. The defendants were then forced to compel Ms. Statum to obtain her sworn testimony regarding their claims. The trial court granted the motion to compel and sanctioned the plaintiff, awarding the defendants $500.00 in attorney's fees and $128.00 in court costs.

La. C.C.P. art. 1443 provides that: "Any objection during a deposition shall be stated concisely and in a non-argumentative and non-aggressive manner. Evidence objected to shall be taken subject to the objections." Additionally, La. C.C.P. art. 1469 authorizes the trial court to sanction a deponent if that deponent fails to answer questions. Further, with respect to deponents and attorneys instructing their clients not to answer, and refusing to permit the deposition, La. C.C.P. art. 1469 (4) provides that:

> [T]he court shall, after opportunity for hearing, require the party . . . to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

La. C.C.P. art. 1469 (4).

Ms. Statum gives this Court no reason why the motion to compel should not have been granted nor why she should not have been sanctioned. Accordingly, when applying the statutory law to her and her counsel's actions at the deposition, we find no abuse of discretion on the part of the trial court in either sanctioning Ms. Statum or in compelling her to testify.

6

The third issue that Ms. Statum raises for review concerns whether the trial court erred in finding that she had failed to timely respond to the defendants' request for admissions and then abused its discretion in sanctioning her.

Pursuant to La. C.C.P. art. 1466, "a party may serve upon any other party a written request for an admission" of the truth of any relevant factual matter. According to La. C.C.P. art. 1467, a matter is deemed admitted unless a written answer or objection is served on the party making the request within the specified time after service of the request. *See Prestage v. Clark*, 97-0524 (La. App. 1 Cir. 12/28/98), 723 So.2d 1086, 1090.

In the instant case, Ms. Statum contends that she responded to the defendants' request for admissions on June 13, 2020. However, the defendants maintain that they didn't receive any response until sometime in September of 2020, after the deadline for a response had already passed. Based upon a search of the defendants' email inboxes, deleted items, spam, junk mail, and paper mail, as well as an expert review of the objective properties and metadata of the document that Ms. Statum's counsel provided, the defendants contend that it is evident that Ms. Statum's responses were not sent in June of 2020, but were only created and sent after the defendants filed their motion to have requests for admission deemed admitted, in September of 2020.

In connection with this case, the defendants hired an independent expert IT consultant to examine the properties of the document and its metadata. The expert IT consultant provided the trial court with his report attesting to his audit of the "properties" and "metadata" of "Plaintiff's Answer to Requests for Admissions, Supplemental Interrogatories and Requests for Production of Documents." Based upon the data provided to him, the expert IT consultant determined: (1) the PDF

7

files purporting to be Ms. Statum's Answers to Requests for Admission, Supplemental Interrogatories and Requests for Production of Documents were created from a Word file using a Mac with an embedded quartz PDF creation tool in the Macintosh operating system; (2) the above mentioned PDF files were created on September 16, 2020, at 10:41:58 AM with no modifications to their respective metadata since; (3) the PDF files could not possibly have been sent on the date of June 13, 2020, at 5:45:11 p.m., as they have a creation date of September 16, 2020, at 10:41:58 a.m. and (4) there were no signs that the metadata had been altered.

Although Ms. Statum continues to deny that she failed to timely respond to requests for admission, she has not provided this Court with any evidence in the record to support her position. Therefore, based on the evidence in the record, we find no error in the trial court's ruling, deeming admitted the defendants' requests for admission. Accordingly, we find no abuse of discretion in sanctioning the plaintiff.

The fourth issue that Ms. Statum raises for review is whether the trial court erred in sanctioning plaintiff's counsel for not providing a written statement that plaintiff's counsel, in addition to plaintiff, did not have any contracts with Medport, a third-party purchaser of medical receivables. Despite plaintiff's assertion to the contrary, the sanctions were directed only against the plaintiff and not her counsel.

In the instant case, the subpoena was validly served upon Ms. Statum's counsel. Ms. Statum did not respond with any documentation, other than an email from her attorney stating that "Ms. Statum is not in possession of the contracts with the third-party finance companies." Despite the fact that the subpoena requested

more than simply funding contracts, Ms. Statum refused to produce additional information.

As a result, the defendants were forced to file a motion to compel against Ms. Statum.  Ms. Statum opposed the motion solely arguing that the contracts were not relevant and that the defendants were already in possession of her medical records.

During all relevant times in which Ms. Statum obtained medical treatment in connection with this case, her medical bills were directed to Total Medical Concepts and/or Medport, which operated out of Ms. Statum's counsel's, Vanesa Motta, former law office at 525 Clay Street in Kenner, Louisiana.  One of Ms. Statum's medical providers, Louisiana Pain Specialists, produced a referral sheet indicating that Ms. Statum was "insured" by "Attny Vanessa Motta" and "Sean Alfortish."  Defendant's' counsel also provided the trial court with email correspondence between a representative of Medport (Sean Alfortish); an employe of One Spine Institute and Integrated Health Management (Eric Stein); and Vanessa Motta, through a dedicated [medicals@mottalaw.com](mailto:medicals@mottalaw.com) email address.

The trial court found Ms. Statum in contempt for failure to adequately respond to a subpoena duces tecum ("SDT") served upon her.  Ms. Statum contends that "there was nothing in an SDT which require[d] that Plaintiff respond to any document requests in writing."  However, Ms. Statum has not provided this Court with any legal authority to support her position or how she contends that the trial court abused its discretion.

La. C.C.P. art. 1357 states:

> "A person who, without reasonable excuse, fails to obey a subpoena may be adjudged in contempt of the court which issued the subpoena.

The court may also order a recalcitrant witness to be attached and brought to court forthwith or on a designated day."

"Contempt of court' is defined by La. C.C.P. art. 221 as "any act or admission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." Generally, contempts of court are of two types: direct and constructive. *See* La. C.C.P. art. 221. Direct contempts are those which are "committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record." La. C.C.P. art. 222.

Ms. Statum ignored the breadth of the subpoena and refused to produce additional documentation or provide a formal subpoena response, other than an email through her counsel. Ms. Statum contended that she possessed no documents concerning the setting of her medical appointments or the arrangements for the payment of her medical bills. Regarding any emails between Ms. Statum and her counsel concerning medical appointments and costs, Ms. Statum's counsel simply claimed that "those emails are not relevant" and refused to respond further to the SDT   Based on the foregoing, we cannot say that the trial court abused its discretion finding Ms. Statum in contempt.

In the final issue she prevents for review, Ms. Statum contends that the trial court erred and abused its discretion in denying her motion to compel discovery.

"It is well established that trial courts in Louisiana have broad discretion when regulating pre-trial discovery, which discretion will not be disturbed on appeal absent a clear showing of abuse." *Moak v. Illinois Cent. R. Coo.*, 631 So.2d

10

401, 406 (La. 1994).[4]  The party seeking an order to compel discovery has the burden of proving that the matters sought to be discovered are relevant and that the discovery sought is within the scope of the discovery articles.  *See Fuller v. Wal-Mart Stores, Inc.*, 519 So.2d 366 (La.App. 2 Cir. 1988); *Rullan v. Adobbati*, 96-0848 (La. App. 4 Cir. 5/8/96), 674 So.2d 417, 419.  The discoverability test as noted in our codal articles governing the scope of discovery, entails first asking whether answering the discovery is feasible and practicable; if that answer is in the affirmative, the court then determines whether an answer to the discovery would expedite the litigation by either narrowing the area of controversy or avoiding unnecessary testimony or providing a lead to evidence.  *See Dabezies v. Trelo*, 2018-0278 (La.App. 4 Cir. 5/23/18), 248 So.2d 498.

Ms. Statum does not appeal the entire judgment on her Motion to Compel, but only regarding for discovery requests – Requests for Production of Documents 48, 54, 58, and Interrogatory No. 11.  Requests for Production Nos. 48 and 54 request evidence concerning a preventability assessment under the aegis of the Federal Motor Carrier Safety Act ("FMCSA").  However, the Quality defendants did not identify any FMCSA preventability assessment in their discovery responses because there was none.  Request for Production No. 58 and Interrogatory No. 11 involve the identification and production of "all policies, procedure, rules, quidelines, directives, manuals, handbooks…"  These inquiries appear overly broad.  There also are not any claims of independent negligence asserted against Quality.  *See Liberstat v. J&K Trucking, Inc.*, 2000-192 (La.App. 2 Cir. 10/11/00), 772 So.2d 173.

---

[4] Holding modified by *Wolford v. JoEllen Smith Psych. Hosp.*, 96-2460 ((La. 5/20/97), 693 So.2d 1164.

Ms. Statum's discovery does nothing to narrow the issues, but is instead a fishing expedition seeking a multitude of documents, which have no relevance to the underlying litigation, nor that serve to help narrow the issues. Accordingly, we find no error of abuse of discretion in the trial court's denying Ms. Statum's motion to compel.

For the above and foregoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED**